**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ANTHONY SZACH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 14 C 7441** |
| **v.** ) | |
| ) | **Chief Judge Rubén Castillo** |
| **VILLAGE OF LINDENHURST, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Anthony Szach, a *pro se* plaintiff, brought this removed action for false arrest and related claims stemming from a drunk-driving arrest. He sues the Village of Lindenhurst (the "Village" or "Lindenhurst"), Lindenhurst Police Officers John Fisher and Ralph Goar, Lindenhurst Police Chief Kevin Klahs, Village Trustee Dominic Marturano, Village Mayor Susan Lahr, Village Deputy Clerk Vicki Vanschloteren, Village Treasurer Art Neubauer, Village Administrator Matt Formica, District Attorney Brett Henne, Lake County Circuit Judge Helen Rozenberg, Lake County Assistant Public Defender Elizabeth Schroeder, Lake County State's Attorney Michael Nerheim, court reporter Barbara Franger, Illinois Secretary of State Jesse White, and Illinois Attorney General Lisa Madigan (collectively "Defendants"). (R. 14, Am. Compl.) Before the Court are separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Judge Rozenberg, Franger, Secretary White, and Attorney General Madigan (the "State Defendants"), (R. 20); State's Attorney Nerheim, (R. 22); and the Village, Officer Fisher, Officer Goar, Police Chief Klahs, Village Trustee Marturano, Mayor Lahr, Village Clerk Vanslochteren, Village Treasurer Neaubauer, Village Administrator Formica, and District Attorney Henne (the "Lindenhurst Defendants"), (R. 26). For the reasons stated below, the motions are granted.

## RELEVANT FACTS

The Court has made every effort to liberally construe Plaintiff's *pro se* complaint and to discern the relevant facts from within it. According to the amended complaint, Plaintiff is "a sovereign citizen of the United States of America." (R. 14, Am. Compl. at 1.) He is 44 years old and lives in Gurnee, Illinois. (*Id.* at 2.) On January 4, 2013, at approximately 9:30 p.m., Plaintiff was driving eastbound on Route 132 in Lindenhurst, when he noticed a police vehicle "tailing him." (*Id.* at 4.) He alleges that the officer "used his police vehicle emergency Lights [sic] when there was no emergency . . . and no crime committed[.]" (*Id.*) Plaintiff eventually pulled over and was approached by Officer Fisher, who asked to see his driver's license. (*Id.* at 5.) Officer Fisher then asked him to step out of the car—a request that Plaintiff acknowledges he "refused." (*Id.*) Instead, Plaintiff asked the officer why he had been stopped. (*Id.*) Officer Fisher allegedly responded, "I want you to perform sobriety tests to see if you are ok to drive, and if you do not, I am going to take you to jail." (*Id.*) Plaintiff claims that he was "scared by the [i]ntimidating threat," and stepped out of his car, but he acknowledges that he "refused" Officer Fisher's request that he take a breathalyzer test. (*Id.*) Officer Goar, who was also present on the scene, then placed Plaintiff under arrest. (*Id.*) Plaintiff alleges that the officers told him "you are under arrest for D.U.I." (*Id.*)

Plaintiff claims that he was then "kidnapped" by the officers and taken to the Lindenhurst police station and charged with various traffic offenses. (*Id.*) He alleges that the officers also wrongfully searched his car and had it towed away "without [his] consent or a warrant." (*Id.*) At the station, Officer Fisher allegedly said to Plaintiff, "Do you want to confess to drinking otherwise I will charge you with A [sic] felony and obstructing justice." (*Id.*) Plaintiff claims that he refused "the terms demanded upon him." (*Id.*) He further claims that Officer Fisher then

asked him if he had $300 to post bail, to which Plaintiff responded "no." (*Id.*) He alleges that the officers then went in his wallet and took out a $100 bill "without his consent." (*Id.*) He accuses the officers of "robbing him." (*Id.*)

As a result of Plaintiff's refusal to take a breathalyzer test, the Illinois Secretary of State's Office subsequently suspended Plaintiff's driver's license for a period of three years.[1] (*Id.* at 6.) Plaintiff claims that the decision to suspend his license was improper because it was done "without his consent." (*Id.*) He further claims that the suspension was "arbitrary" and made with "reckless indifference to [his] rights." (*Id.*) He is suing Secretary White in connection with the suspension because the Secretary of State's Office is "under [his] supervision." (*Id.*)

In May 2013, Plaintiff appeared before Judge Rozenberg on the traffic charges. (*Id.*) The case proceeded to a jury trial, with Plaintiff being represented by Schroeder, his public defender. (*Id.*) Plaintiff was found guilty of illegal lane usage and failure to yield. (R. 20, State Defs.' Mot. to Dismiss, Ex. B, State Ct. Order at 8.) He was sentenced to 12 months of court supervision, and ordered to pay a fine and complete a four-hour traffic safety program. (*Id.* at 9.) Judge Rozenberg also denied Plaintiff's request to have his driver's license reinstated. (R. 14, Am. Compl. at 6.) Plaintiff claims that the entire state court proceeding should be declared "null and void" as a violation of his "substantive rights." (*Id.* at 8.) He claims that, in pursing the charges, District Attorney Henne and State's Attorney Nerheim violated his rights, and that

---

[1] Illinois law requires drivers on any public highway within the state to submit to a breathalyzer or other testing when cited for driving under the influence of alcohol. *See* 625 Ill. Comp. Stat. 5/11-501.1. The Secretary of State is authorized to suspend the driver's license of an individual who refuses to submit to testing or is found to have a blood alcohol level of 0.08 or higher. *Id.* The suspension is up to one year for first-time offenders and up to three years for repeat offenders. 625 Ill. Comp. Stat. 5/6-208.1(a). A driver may contest the suspension by requesting an administrative hearing with the Secretary of State. 625 Ill. Comp. Stat. 5/11-501.8(e). The decision of the Secretary of State is then subject to judicial review under the state's Administrative Review Act. *See* 735 Ill. Compl. Stat. 5/3-101 *et seq.*; *Arvia v. Madigan*, 809 N.E.2d 88, 96-97 (Ill. 2004).

Judge Rozenberg violated his rights when she denied his motion to dismiss the charges and refused to rescind the suspension of his driver's license. (*Id.*) He further claims that all Defendants—including the Judge, the prosecutors, the Village Mayor, the court reporter, the police officers, and various other state and local officials—conspired together to interfere with his "inherent right" to travel on the public roadways. (*Id.* at 8-9, 11.) He seeks various forms of relief, including monetary damages and a declaration from this Court that he can continue driving even though his license has been suspended. (*Id.* at 7, 13-14.)

## PROCEDURAL HISTORY

In March 2014, Plaintiff filed a *pro se* action in Lake County Circuit Court against Officer Fisher, Officer Goar, Judge Rosenberg, State's Attorney Nerheim and others; he then attempted to "remove" the case to federal court. (R. 20, State Defs' Mot. to Dismiss, Exs. A & B.) The case was assigned to District Judge Rebecca R. Pallmeyer. (R. 20-1, Ex. A, Judge Pallmeyer's Order.) On April 15, 2014, Judge Pallmeyer dismissed the case, concluding that Plaintiff could not properly "remove" a state court case in which he was a plaintiff. (*Id.* at 1-2.) Judge Pallmeyer noted other problems with Plaintiff's complaint, including that several of the defendants were entitled to immunity and some of his claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), in light of his state conviction. (*Id.* at 2-3.) Judge Pallmeyer viewed Plaintiff's remaining claim—that the police had stolen money from him—as a state law claim over which she declined to exercise jurisdiction. (*Id.* at 3.) Accordingly, she dismissed the case without prejudice. (*Id.*) There is no record of Plaintiff having filed an appeal of this ruling. *See Szach v. Vill. of Lindenhurst, et al.*, No. 14 C 2281 (N.D. Ill. filed Mar. 31, 2014).

On September 2, 2014, Plaintiff filed a second *pro se* complaint in Lake County Circuit Court alleging many of the same claims against the same defendants, as well as new ones. (R. 1-

1, State Ct. Compl.) Defendants removed the case to this Court on the basis of federal question jurisdiction. (R. 1, Notice of Removal.) On October 14, 2014, the Court dismissed Plaintiff's state court complaint without prejudice, and granted Plaintiff 30 days to file an amended federal complaint. (R. 10, Min. Entry.) On November 13, 2014, Plaintiff filed his amended complaint, which he titled, "REMOVAL AMENDED." (R. 14, Am. Compl.) Giving this document liberal construction, it appears to contain both federal claims brought under 42 U.S.C. § 1983 as well as related state law claims. Plaintiff formulates his claims as follows: (1) violation of his "First Amendment Right to travel" by Officer Fisher; (2) "Disorderly Conduct" by Officer Fisher; (3) "Interference with commerce" by Officer Fisher, Judge Rosenberg, and Secretary White; (4) "Kidnapping" by Officer Fisher; (5) "Search without Warrant" by Officers Fisher and Goar; (6) "Personal Property Robbery" by Officers Fisher and Goar; (7) "Aggravated Robbery" by Officer Fisher; (8) "Conspiracy" by all Defendants; (9) "Seditionary Treason" by all Defendants; and (10) "Unlawful arrest" by all Defendants. (R. 14, Am. Compl at 1-14.)

In December 2014, the State Defendants, the Lindenhurst Defendants, and State's Attorney Nerheim filed separate motions to dismiss under Rule 12(b)(6). (R. 20, State Defs.' Mot. to Dismiss; R. 22, Nerheim's Mot. to Dismiss; R. 26, Lindenhurst Defs.' Mot. to Dismiss.) Plaintiff requested an extension of time to respond to the motions, and the Court granted him until February 6, 2015, to file his response. (R. 35, Min. Entry.) Plaintiff then proceeded to file a variety of documents, including two motions for "default judgment," (R. 30, 39); an "Affidavit of Truth," (R. 32); an "Emergency Petition for Substantiated Writ of Habeas Corpus," (R. 48); a motion for "stay of judgment/proceeding," (R. 49); and a motion to strike, (R. 50). Plaintiff also attempted to file another amended complaint without obtaining leave of Court. (*See* R. 40, Am. Compl.) In February 2015, the State Defendants and State's Attorney Nerheim filed separate

replies in support of their respective motions to dismiss. (R. 44, State Defs.' Reply; R. 46, Nerheim's Reply.) On March 31, 2015, the Court held a hearing on Plaintiff's motions, and ultimately denied the motions and struck his proposed amended complaint. (R. 51, Min. Entry.) The Court stated that it would rule by mail on the pending motions to dismiss.[2] (*Id.*) On April 3, 2015, Plaintiff filed a motion entitled, "Motion to Disqualify Judge Ruben Castillo Pursuant to Illinois Code of Judicial Conduct and Violations Pursuant to Illinois Trial Rules," requesting that this Court recuse itself from his case. (R. 52, Pl.'s Mot. to Disqualify.)

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400,

---

[2] Although Plaintiff has not filed any document clearly labeled as a "response" to Defendants' motions to dismiss, he has filed certain documents which do, in some respect, respond to Defendants' arguments. (*See* R. 36, "Notice of Answer to Defendants' Response" (herein "Pl.'s Resp."); R. 38, "Notice of Motion to Demand that Defendant Parties Prove Jurisdiction over Claimaint" (herein "Pl.'s Demand").) The Court has considered these documents in deciding the motions. The Court notes that it has twice suggested to Plaintiff that he should consider consulting with an attorney regarding his lawsuit. (*See* Tr. of Proceedings, Dec. 23, 2014; Tr. of Proceedings, Mar. 31, 2015.) He has responded by advising the Court in no uncertain terms that it is his right, and his choice, to represent himself in this matter. (*See, e.g.*, Tr. of Proceedings, Dec. 23, 2014, at 10:06:51.)

6

403 (7th Cir. 2010). Nevertheless, a *pro se* complaint must be liberally construed "however inartfully pleaded[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In deciding a Rule 12(b)(6) motion, the Court is limited to the complaint itself, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice."[3] *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citation omitted).

## ANALYSIS

## I.     Motion to Disqualify

The Court first must address Plaintiff's request that the Court recuse itself from his case. (R. 52, Pl.'s Mot. to Disqualify.) Plaintiff's motion is brief, and consists mainly of invective accusing this Court of "knowingly, willingly, intentionally, with forethought, malice and vexation" violating various state and federal laws, with little explanation as to why he believes recusal is warranted. (*Id.* at 1.) Nevertheless, it can be discerned from his filing that he believes the Court is biased against him, apparently because of its March 2015 ruling denying several of his motions. (*See id.* at 1-2.)

---

[3] The Court takes judicial notice of the public court records submitted by the parties: Plaintiff's complaint filed in the case before Judge Pallmeyer, (R. 20-2); Judge Pallmeyer's order, (R. 20-1); the order of conviction in the state criminal case, (R. 27-1 and R. 20-2); the docket sheet and a court filing in the state criminal case, (R. 38 at 34, 41-42); and the docket sheet in Plaintiff's state civil case, (R. 27-2). The Court can properly consider these court documents in deciding the motion to dismiss. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (district court properly considered public court records in deciding motion to dismiss under Rule 12(b)(6)). However, the Court is not permitted to consider any other extraneous documents without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d). Thus, the Court has not considered the police reports, receipts, and other miscellaneous documents Plaintiff submitted with one of his filings. (*See* R. 38, Pl.'s Demand at 13-33, 35-40.) These documents cannot be considered at this stage. *See* Fed. R. Civ. P. 12(d); *Jacobs v. City of Chi.*, 215 F.3d 758, 765-66 (7th Cir. 2000) (in deciding Rule 12(b)(6) motion, district court erred in considering police reports and other outside documents that were submitted by plaintiff and defendant).

Under 28 U.S.C. § 455, a judge must recuse himself if he has a personal bias concerning a party or personal knowledge of disputed facts; if in his prior practice he served as a lawyer in the case or expressed an opinion concerning the merits of it; or if he or his family member has a financial or other substantial interest in the case. 28 U.S.C. § 455(b)(1)-(5). In addition, a judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). However, rulings by the judge "almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Thomas v. Reese*, ---F.3d----, 2015 WL 3452916, at *4 (7th Cir. June 1, 2015) ("Adverse rulings do not constitute evidence of judicial bias."). As the Supreme Court has explained:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555. This standard is not met simply because a judge rejected a party's arguments or spoke harshly to him: "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger . . . are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555-56. Such "ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556.

The relevant question for purposes of 28 U.S.C. § 455(a) disqualification is whether "the judge's impartiality might reasonably be questioned by a well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." *O'Regan v. Arbitration Forums*,

*Inc.*, 246 F.3d 975, 988 (7th Cir. 2001) (internal quotation marks and citation omitted). The standard is an objective one: "That an unreasonable person, focusing on only one aspect of the story, might perceive a risk of bias is irrelevant. . . . [A] reasonable person is able to appreciate the significance of the facts in light of relevant legal standards and judicial practice and can discern whether any appearance of impropriety is merely an illusion." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477-78 (7th Cir. 2010).

Plaintiff does not describe any circumstances in his motion that remotely approach the type of grounds warranting recusal under either Section 455(a) or 455(b). It is clear that Plaintiff is dissatisfied with some of the Court's rulings, and while such arguments may provide grounds for an appeal, they do not demonstrate a basis for recusal. *See Liteky*, 510 U.S. at 555. A judge is "obligated not to recuse himself without reason," *N.Y.C. Dev. Corp. v. Hart*, 796 F.2d 976, 981 (7th Cir. 1986) (citation omitted), and accordingly, Plaintiff's motion will be denied.

## II. Motions to Dismiss

### A. Sovereign Citizenship

It can be discerned from the amended complaint that Plaintiff is a member of the "sovereign citizen" movement, whose followers believe they have special common law rights that cannot be infringed by the government. *See generally El v. AmeriCredit Fin. Servs.*, 710 F.3d 748, 750 (7th Cir. 2013) (explaining the "sovereign citizen" movement). Throughout this pleading he alleges, in various ways, that because of his status as a "sovereign citizen," he is not subject to the traffic laws of the State of Illinois or the jurisdiction of its courts. (*See, e.g.*, R. 14, Am. Compl. at 8 ("Anthony Szach . . . is a man, a natural blood and flesh being whom did not consent to contracts, bonds, Fees, Driver license restriction, or other actions committed by defendants who all acted under Color of law."); *id.* at 7 ("Anthony Szach is a man, and has a

9

right to engage in inherent rights secured by the Constitution of the United States of America, and with lawful excuse engage in those rights while Ignoring [sic] unlawful statutes, codes, [and] regulations imposed by [the] government.").) He makes the same type of assertions in response to the motions to dismiss. (R. 36, Pl.'s Resp. at 2 ("Because I did not acquiesce to quasi jurisdiction or committed an act that would give in personam jurisdiction when stopped in my automobile, the vehicle code contracts are null and void.").); R. 32, Aff. of Truth at 1 ("as a sovereign Citizen of the ... republic . . . I have the UNALIENABLE, FUNDAMENTAL, UNRESTRICTED and UNREGULATED RIGHT TO TRAVEL upon all public walkways and highways . . . unhindered by ANY private, corporate or statutory law, State Department of Motor Vehicles (DMS) or Department of Transportation (DOT) regulation").)

These assertions are patently frivolous. *See United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts."); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (referring to defendant's argument that he was a sovereign not subject to ordinary laws as "shop worn" and "frivolous."). As the State Defendants point out, the U.S. Court of Appeals for the Seventh Circuit has instructed that arguments about sovereign citizenship "should be rejected summarily, however they are presented." (R. 44, State Defs.' Reply at 1-2 (citing *Benabe*, 654 F.3d at 767).) Because it appears that Count I ("right to travel"), Count II ("disorderly conduct"), and Count III ("interference with commerce") are based entirely on Plaintiff's claim of sovereign citizenship, they are dismissed. The Court has likewise disregarded all other allegations and arguments in Plaintiff's filings based on his claim of sovereign citizenship.

**B.    The *Rooker-Feldman* Doctrine**

The State Defendants argue that this Court lacks jurisdiction over Plaintiff's claims

attacking the orders entered by Judge Rozenberg in the state case. (R. 20, State Defs.' Mot. to

Dismiss at 3-4.) Under the *Rooker-Feldman* doctrine,[4] federal district courts lack jurisdiction

over lawsuits "brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The *Rooker-*

*Feldman* doctrine precludes federal courts from deciding claims that were either decided by the

state court or are "inextricably intertwined" with a state court judgment. *Crawford v.*

*Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011). In essence, under the

*Rooker-Feldman* doctrine, lower federal courts lack jurisdiction to review state court judgments,

except to the extent authorized by 28 U.S.C. § 2254. *See Sides v. City of Champaign*, 496 F.3d

820, 824 (7th Cir. 2007). Instead, "only the Supreme Court of the United States may set aside a

judgment entered by a state court." *Id.*

Within Count VIII ("conspiracy"), Count IX ("seditionary treason"), and Count X

("unlawful arrest"), Plaintiff asks this Court to review and/or invalidate Judge Rozenberg's

orders in the state case, including her decision not to reinstate his driver's license. (R. 14, Am.

Compl. at 11-14.) The Court has no authority to grant this relief. In responding to the motions

to dismiss, Plaintiff suggests that his case is not subject to the *Rooker-Feldman* bar because "the

state court proceeding is null and void for lack of due process of law"; in other words, he

believes that the state court lacked jurisdiction over him. (R. 36, Pl.'s Resp. at 3.) Aside from

---

[4] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460
U.S. 462 (1983).

the fact that his "sovereign citizen" jurisdictional arguments are patently frivolous, the *Rooker-Feldman* bar applies even if a state court's order was "erroneous or unconstitutional." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999) (citation omitted). Plaintiff may have some type of appeal rights in state court, but he cannot pursue this federal action seeking to invalidate the state court's orders through a constitutional challenge. Accordingly, all such allegations contained in the amended complaint are dismissed with prejudice.

### C.    Res Judicata

The State Defendants also argue that this action is barred by res judicata because of Judge Pallmeyer's order dismissing Plaintiff's earlier case. (R. 20, State Defs.' Mot. to Dismiss at 6.) Res judicata prevents "the relitigation of claims already litigated as well as those that could have been litigated but were not" in a prior lawsuit. *Palka v. City of Chi.*, 662 F.3d 428, 437 (7th Cir. 2011) (citation omitted). For res judicata to apply, three requirements must be met: there must be "(1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Id.* (citation omitted). While there is clearly overlap in the parties and causes of action in the two cases, the second requirement is not satisfied. Judge Pallmeyer's order of dismissal in the first case was based on the notion that a state court plaintiff cannot "remove" an action to federal court. (R. 20-1, Ex. A, Judge Pallmeyer's Order.) In other words, the action was never properly before the court. Although Judge Pallmeyer noted other problems with Plaintiff's complaint, she ultimately dismissed the entire action *without* prejudice. (*See id.* at 3.) Under these circumstances, res judicata would not bar the present action. *See Robinson v. Sherrod*, 631 F.3d 839, 843 (7th Cir. 2011) ("Because the dismissal of the present suit was without prejudice, res judicata . . . will not bar a future suit based on identical grounds."); *Centr. States, Se. & Sw. Areas Pension Fund v.*

*Hunt Truck Lines, Inc.*, 296 F.3d 624, 629 (7th Cir. 2002) (res judicata will not apply "if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action") (citation omitted). Therefore, the Court declines to dismiss the amended complaint based on res judicata. Nevertheless, a number of the concerns noted by Judge Pallmeyer—including judicial immunity and the *Heck* bar—exist in this case as they did in the earlier case. Those issues are addressed separately below.

### D.     Judicial Immunity

The State Defendants argue that Judge Rozenberg is entitled to absolute judicial immunity for her actions taken in Plaintiff's state case. (R. 20, State Defs.' Mot. to Dismiss at 7-8.) Judges have absolute immunity from claims of alleged misconduct concerning actions taken in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 357-58 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction,'" such as where a judge authorized to hear only probate cases conducts a criminal trial. *Id.* at 356 & n.7. In his amended complaint, Plaintiff claims that Judge Rozenberg's rulings were unfair and erroneous. (R. 14, Am. Compl. at 6, 9.) But even if he is correct, the judge is entitled to absolute judicial immunity. If a state judge errs, "a party's remedy is through the appellate process," not through a separate lawsuit against the judge. *Dawson v. Newman*, 419 F.3d 656, 660-61 (7th Cir. 2005) (citation omitted). Therefore, Judge Rozenberg is dismissed with prejudice.

### E.     *Heck* Bar

Defendants next join in arguing that under *Heck*, Plaintiff is barred from pursuing a false arrest claim under the Fourth Amendment, or asserting any other claim that would necessarily

imply the invalidity of his state conviction.[5] (*See* R. 20, State Defs.' Mot. to Dismiss at 5; R. 27,

Lindenhurst Defs.' Mem. at 5; R. 22, Nerheim's Mot. to Dismiss at 1.) Pursuant to *Heck*, a

plaintiff is barred from pursuing a civil rights claim under Section 1983 that would undermine

his state conviction. As the Supreme Court has explained:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Id.* at 486-87.

To determine whether a plaintiff's claim is barred by *Heck*, the Court must analyze the

relationship between the civil claim and the criminal charge on which the plaintiff was

convicted. *See McCann v. Neilsen*, 466 F.3d 619, 621-22 (7th Cir. 2006). The *Heck* bar will

apply if the plaintiff makes allegations "that are inconsistent with the conviction's having been

valid," even if he "disclaims any intention of challenging his conviction[.]" *Id.* at 622 (citation

omitted). On the other hand, if the factual matters at issue in the civil rights suit are distinct from

the issues decided in the criminal case, the *Heck* bar does not apply and "the § 1983 action

should be allowed to proceed." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014); *see also*

*Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). Fourth Amendment claims require a

particularly nuanced analysis. *See Evans*, 603 F.3d at 364; *VanGilder v. Baker*, 435 F.3d 689,

692 (7th Cir. 2006). Many Fourth Amendment claims can proceed notwithstanding *Heck*,

---

[5] In connection with this argument, the State Defendants assert that Plaintiff was convicted of "driving under the influence of alcohol." (R. 20, State Defs.' Mot. to Dismiss at 5.) This appears to be a misstatement. They have not submitted any documentation to show that Plaintiff was convicted of drunk-driving; instead, the state court order they submit reflects that Plaintiff was convicted of illegal lane usage and failure to yield. (*See* R. 20-2, Ex. B, State Ct. Order.)

because "an arrest without probable cause violates the fourth amendment but does not imply the invalidity of a conviction[.]" *Evans*, 603 F.3d at 364. However, where the grounds for the conviction flow from the same facts underlying the allegations of false arrest, the claim is barred by *Heck. See id.*; *see also Puch v. Vill. of Glenwood*, No. 05 C 1114, 2012 WL 2502688, at *4 (N.D. Ill. June 27, 2012) (false arrest claim was barred by *Heck* where the plaintiff was convicted of an offense that had the same factual basis as the probable cause determination); *Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *7 (N.D. Ill. Nov. 4, 2013) (false arrest claim was barred by *Heck* where plaintiff was convicted of "the very behavior that would have constituted probable cause for her arrest").

Giving the amended complaint liberal construction, the Court interprets Count IV ("kidnapping") and Count X ("unlawful arrest") as alleging that Officers Fisher and Goar violated the Fourth Amendment when they arrested Plaintiff without a lawful basis to do so. (*See* R. 14, Am. Compl. at 10, 13-14.) Probable cause to arrest is an absolute defense to a claim under Section 1983 for false arrest, false imprisonment, or malicious prosecution. *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). A police officer has probable cause to make an arrest when "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mich. v. DeFillippo*, 443 U.S. 31, 37 (1979). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In addition, "an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed,

even if it is not the crime with which the officers initially charge the suspect." *Fox v. Hayes*, 600

F.3d 819, 837 (7th Cir. 2010); *see also Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682

(7th Cir. 2007) ("probable cause to believe that a person has committed *any* crime will preclude

a false arrest claim, even if the person was arrested on additional or different charges for which

there was no probable cause").

Thus, to plead a plausible false arrest claim, Plaintiff must allege that the officers lacked

probable cause to arrest him for *any* offense on the evening of January 4, 2013. *See Fox*, 600

F.3d at 837. However, Plaintiff was convicted of illegal lane usage and failure to yield in

violation of Illinois traffic laws, and *Heck* precludes him from raising any allegations in this

lawsuit that would imply the invalidity of his conviction.[6]  Plaintiff's commission of these traffic

offenses would provide a proper basis for the officers to stop his vehicle, order him out of the

car, and arrest him. *See Atwater*, 532 U.S. at 354; *Whren v. United States*, 517 U.S. 806, 810

(1996) ("[T]he decision to stop an automobile is reasonable where the police have probable

cause to believe that a traffic violation has occurred."); *Pennsylvania v. Mimms*, 434 U.S. 106,

109-10 (1977) (a police officer may, as a matter of course, order the driver of a lawfully stopped

---

[6] *Heck* may not apply where habeas relief is unavailable to the plaintiff. *See Burd v. Sessler*, 702 F.3d 429, 435 n.3 (7th Cir. 2012). While it is clear from the complaint that Plaintiff's state conviction still stands, it is unclear whether Plaintiff pursued habeas relief and was unsuccessful, or whether he did not pursue such relief at all. It is unlikely this relief would be available to him at present, because he is not incarcerated and his term of supervised release has expired. *See* 28 U.S.C. § 2254(a) (providing that habeas corpus is available only to persons who are "*in custody* in violation of the Constitution or laws or treaties of the United States" (emphasis added)); *Maleng v. Cook*, 490 U.S. 488, 490-92 (1989) (per curiam) (explaining the "in custody" requirement). However, Plaintiff could have sought habeas relief during the 12 months he was on supervised release, because "mandatory supervised release often entails sufficient restraints on liberty to meet the 'in custody' requirement of habeas corpus." *Burd*, 702 F.3d at 435. Plaintiff's failure to pursue habeas relief when he had the opportunity to do so would not free him from the constraints of *Heck*. *Id.* at 436 ("*Heck* applies where a § 1983 plaintiff *could* have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing.").

16

car to exit his vehicle); *see also Jackson v. Parker*, 627 F.3d 634, 638-40 (7th Cir. 2010) (plaintiff failed to establish a Fourth Amendment violation where police had probable cause to arrest him for committing a minor traffic offense).

Because Plaintiff cannot challenge the fact that he committed these traffic offenses, his false arrest claims are barred by *Heck*. Accordingly, Counts IV and X must be dismissed. Because it appears that Count VIII—the conspiracy claim—rests in part on a contention that the officers violated Plaintiff's rights by stopping his vehicle and arresting him without a legal basis to do so, that claim must also be dismissed. The dismissal will be without prejudice to Plaintiff's right to reassert these claims if and when his conviction is vacated, reversed, or otherwise declared invalid. *See Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) (dismissal based on *Heck* must be without prejudice).

Giving the amended complaint liberal construction, the Court reads Count V ("search without warrant") and Count VI ("personal property robbery") as separately challenging the search and towing of Plaintiff's vehicle under the Fourth Amendment. (R. 14, Am. Compl. at 11.) In Count V, Plaintiff alleges that Officers Fisher and Goar violated his rights "by searching his automobile while No crime was committed . . . and without SZACH's consent." (*Id.*) In Count VI, he alleges that the officers committed "robbery . . . [w]hen they seized his automobile by having it towed by a towing company when no crime has been Committed, and without his consent or a warrant from the court." (*Id.*)

The seizure and impoundment of a vehicle may be considered reasonable when it is performed pursuant to a routine police policy, particularly when the driver has been arrested and no one else is present to drive the car away. *See United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006). Once the police have properly impounded a vehicle, a routine inventory search of the

17

vehicle's contents may be conducted without a warrant, *Colorado v. Bertine*, 479 U.S. 367, 371 (1987), but only "if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures," *United States v. Velarde*, 903 F.2d 1163, 1165 (7th Cir. 1990) (internal citation omitted).

Ordinarily search and seizure claims are not barred by *Heck*, because misconduct by the police in connection with a defendant's property does not necessarily imply the invalidity of his underlying conviction. *See Evans*, 603 F.3d at 363-64 ("Many claims that concern how police conduct searches . . . are compatible with a conviction."); *Gonzalez v. Entress*, 133 F.3d 551, 553-54 (7th Cir. 1998) (holding that claims based on unlawful search or seizure are generally not barred by *Heck*). In this case, however, Plaintiff is plainly claiming that the search and seizure were improper because "no crime was committed"—in other words, that the officers had no basis to arrest him—an allegation that runs afoul of *Heck*. (*See* R. 14, Am. Compl. at 11.) Unless Plaintiff wishes to abandon this aspect of his claim, the claim cannot proceed. *See Evans*, 603 F.3d at 364 (observing that *Heck* problem could be avoided if plaintiff was "willing to abandon" the one aspect of his excessive force claim that was barred by *Heck*). Accordingly, Counts V and VI are dismissed without prejudice. Plaintiff will be given an opportunity to replead his search and seizure claims to omit any allegations that would necessarily imply the invalidity of his state conviction.

In Count VII, Plaintiff separately alleges that the officers committed "aggravated robbery" by taking money out of his wallet without his permission. (R. 14, Am. Compl. at 11.) It does not appear that this claim would implicate *Heck* or undermine the validity of Plaintiff's

18

state conviction, but as the Lindenhurst Defendants point out, the claim has other problems. (*See* R. 27, Lindenhurst Defs.' Mem. at 11-12.) First, it cannot be discerned whether Plaintiff is alleging that the officers stole money from him, or if he is simply upset that the officers went in his wallet without his permission. (*See* R. 14, Am. Compl. at 5 (alleging that Officer Goar "had went into SZACH's wallet and had Taken out a one-hundred dollar bill without his consent, robbing him and threw the American debt Note to Fisher").) If it is the latter, his claim has no merit because under the Fourth Amendment the police are permitted to inventory and secure the personal belongings of individuals who are under arrest. *See Ill. v. Lafayette*, 462 U.S. 640, 644-46 (1983). To the extent Plaintiff is trying to charge the officers with a crime, he does not have the ability to institute criminal charges or compel the enforcement of criminal laws against the officers. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (7th Cir. 2007) (affirming dismissal of *pro se* litigant's claims based on violations of criminal statutes, which are "not enforceable through a civil action"). Accordingly, these allegations fail to state a plausible federal claim.

Plaintiff does not clearly articulate the source of this claim, and he may in fact be attempting to allege a state law claim for conversion. *See In re Thebus*, 483 N.E.2d 1258, 1260-61 (Ill. 1985) (recognizing that money may be the subject of a conversion claim). To establish conversion under state law, a plaintiff must show "that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Putting aside whether Plaintiff has adequately stated a claim for conversion, under

Illinois law, a civil action against a governmental entity or its employees must be brought within one year of the date of injury. 745 Ill. Comp. Stat. 10/8-101(a). In this case, Plaintiff is complaining about actions by Village police officers that occurred on January 4, 2013. (R. 14, Am. Compl. at 4-5.) He filed this lawsuit in state court on September 2, 2014, more than a year later. (*See* R. 1-1, State Ct. Compl.) Accordingly, a state law claim for conversion would be barred in any event. For these reasons, Count VII is also dismissed with prejudice.

### F.    Prosecutorial Immunity

State's Attorney Nerheim and District Attorney Henne argue that they are entitled to absolute prosecutorial immunity for their actions taken in Plaintiff's state criminal case. (R. 27, Lindenhurst Defs.' Mem. at 9; R. 22, Nerheim's Mot. to Dismiss at 2.) With respect to these Defendants, Plaintiff alleges in Count VIII that State's Attorney Nerheim "[d]eliberately permitted prosecution of SZACH's case matter while being in collusion with Defendants Henne and Rozenberg, with intent to racketeer SZACH of American currency[.]" (R. 14, Am. Compl. at 12.) As a threshold problem, it does not appear that State's Attorney Nerheim or the Lake County State's Attorney's Office was actually involved in the prosecution of Plaintiff's case. Instead, it can be discerned from the documents before the Court that the criminal case was prosecuted by District Attorney Henne, who works for the Village. (*See* R. 14, Am. Compl. at 3, 6; R. 38, Pl.'s Demand at 34, 41-42.) State's Attorney Nerheim can only be held liable for his own misconduct, not for the misconduct of other individuals. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility."); *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." (citation omitted)).

Regardless of the precise nature of the involvement of these two prosecutors, both of them would be entitled to absolute prosecutorial immunity for deciding to bring charges against Plaintiff or prosecuting the state's case. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [§] 1983."). Plaintiff has failed to explain why immunity should not apply here. Accordingly, State's Attorney Nerheim and District Attorney Henne are dismissed with prejudice.[7]

## G.    Failure to State a Claim

Defendants raise various arguments about Plaintiff's failure to adequately allege a claim as to certain Defendants. The Court addresses each in turn.

### 1.    Franger

The court reporter, Franger, argues that Plaintiff has not stated a plausible claim against her, because he merely lists her name and job title in conclusory fashion without explaining how she violated his constitution rights. (R. 20, State Defs.' Mot. to Dismiss at 6-7.) As Franger points out, she is simply identified in the beginning of the amended complaint and then referred to along with all other Defendants as a collective group. (*See* R. 14, Am. Compl. at 3.) Under federal pleading standards, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). As the Seventh Circuit has explained:

> A complaint based on a theory of collective responsibility must be dismissed. That is true even for allegations of conspiracy. Although every conspirator is responsible for others' acts within the scope of the agreement, it remains essential to show that a particular defendant joined the conspiracy and knew of its scope.

---

[7] Because immunity bars Plaintiff's claim, the Court need not reach State's Attorney Nerheim's alternative argument that Plaintiff's allegations against him are not sufficiently detailed. (*See* R. 22, Nerheim's Mot. to Dismiss at 3.)

*Id.* Thus, Plaintiff's vague allegations against Franger do not satisfy federal pleading standards, and the fact that Plaintiff is alleging a "conspiracy" between Franger and others does not save his claim.

In response to Franger's request for dismissal, Plaintiff argues that she "is charged with Title 18 Sec. 241 and Sec. 2384 Seditionary Treason as stated in [the] complaint."[8] (R. 36, Pl.'s Resp. at 4.) Plaintiff does not have authority to initiate federal criminal charges against any of the Defendants. Instead, such authority rests exclusively with the U.S. Attorney General. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) (observing that the Executive Branch has the "exclusive authority and absolute discretion to decide whether to a prosecute case" (citation omitted)); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 865 (7th Cir. 1988) ("criminal prosecution is an executive function within the exclusive prerogative of the Attorney General") (internal quotation marks and citation omitted)). For these reasons, Franger is dismissed with prejudice. Because Plaintiff purports to bring federal criminal charges against Franger and the other Defendants in Count IX, that count is also dismissed with prejudice.

### 2. Attorney General Madigan

Attorney General Madigan similarly argues that Plaintiff has not stated a plausible claim against her. (R. 20, State Defs.' Mot. to Dismiss at 6.) Like Franger, the allegations against Attorney General Madigan are quite sparse. Even giving the amended complaint liberal

---

[8] Plaintiff appears to be referencing 18 U.S.C. § 2384, which provides: "If two or more persons . . . conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them. . . or by force to seize, take, or possess any property of the United States contrary to the authority thereof, they shall be fined under this title or imprisoned not more than twenty years, or both." The other statute referenced, 18 U.S.C. § 241, provides in pertinent part: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same . . . [t]hey shall be fined under this title or imprisoned not more than ten years, or both[.]"

construction, the Court cannot discern what involvement, if any, the Attorney General's Office

or Attorney General Madigan had in these events. All Plaintiff does is list her name and job

duties in the beginning of the amended complaint. (R. 14, Am. Compl. at 4.) It appears he may

be trying to hold her liable because she supervises others involved in the state's judicial system.

(*See* R. 36, Pl.'s Resp. at 4.) This alone cannot form the basis of a constitutional claim against

her, however, because there is no general respondeat superior liability under Section 1983. *See*

*Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). The Attorney General must have

personally participated in the deprivation of Plaintiff's rights to be held liable. *See Burks*, 555

F.3d at 594; *Alejo*, 328 F.3d at 936. Again, Plaintiff argues that he should be allowed to proceed

with his claim because Attorney General Madigan is "charged with Title 18 Sec. 241 and Sec.

2384 Seditionary Treason[.]" (R. 36, Pl.'s Resp. at 4.) That argument fails for the reason stated

above. Accordingly, Attorney General Madigan is dismissed with prejudice.

### 3. Secretary White

Secretary White argues that Plaintiff has failed to state a claim against him. (R. 20, State

Defs.' Mot. to Dismiss at 8.) Plaintiff's allegations against Secretary White are somewhat more

detailed, but they suffer from other deficiencies. Plaintiff alleges that Secretary White "violated

USC 1951[9] because his office had a duty to up-Hold the laws of Illinois state constitution." (R.

14, Am. Compl. at 10.) He further alleges that the Secretary's Office "committed fraud on

Szach by restricting Lawful usage of the driver's license contract without the consent of

Szach[.]" (*Id.*) First, "no one has a right to drive; driving on public highways is a privilege

---

[9] Plaintiff appears to be referencing 18 U.S.C. § 1951, which provides in pertinent part:
"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any
article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or
commits or threatens physical violence to any person or property in furtherance of a plan or
purpose to do anything in violation of this section shall be fined under this title or imprisoned not
more than twenty years, or both."

subject to revocation for a number of reasons." *Winsley v. Cook Cnty.*, 563 F.3d 598, 604 (7th Cir. 2009). To the extent Plaintiff believes he has special driving rights as a "sovereign citizen," that argument is patently frivolous. *See Benabe*, 654 F.3d at 767. Additionally, Secretary White cannot be held liable simply because he oversees the Secretary of State's Office, and Plaintiff does not allege that the Secretary had any personal involvement in these events. *See Chavez*, 251 F.3d at 651; *Alejo*, 328 F.3d at 936. Nor can Plaintiff bring federal criminal charges against Secretary White. *See Nixon*, 418 U.S. at 693; *Palumbo Bros.*, 145 F.3d at 865. If Plaintiff is asking this Court to overturn the state court's order refusing to reinstate his driver's license, such relief is barred by the *Rooker-Feldman* doctrine. *See Sides*, 496 F.3d at 824. For these reasons, the allegations against Secretary White fail to state a plausible claim, and he will be dismissed with prejudice.

### 4. Village Officials

Several Village officials—Chief Klahs, Trustee Marturano, Mayor Lahr, Deputy Clerk Vanschloteren, Treasurer Neubauer, and Administrator Formica—argue that they should be dismissed because Plaintiff has not adequately alleged claims against them. (R. 27, Lindenhurst Defs.' Mem. at 8.) Again, Plaintiff merely lists all of these individuals with their names and job titles in the beginning of the amended complaint without providing details about how, if at all, they were involved in these events. (R. 14, Am. Compl. at 2-3.) These individuals cannot be held liable merely because they supervise other Village employees or oversee operations within the Village. *Chavez*, 251 F.3d at 651. They must have personally participated in the violation of Plaintiff's rights to be held liable. *Burks*, 555 F.3d at 594; *Alejo*, 328 F.3d at 936. Under federal pleading standards, Plaintiff cannot simply refer to these Defendants collectively or assert in general terms that they engaged in a conspiracy. *Bank of America*, 725 F.3d at 818. Plaintiff

does not respond to Defendants' request for dismissal. Accordingly, Chief Klahs, Trustee Marturano, Mayor Lahr, Deputy Clerk Vanschloteren, Treasurer Neubauer, and Administrator Formica are dismissed.

These Defendants also argue that Plaintiff has failed to state a claim against the Village itself. (R. 27, Lindenhurst Defs.' Mem. at 10.) As they point out, the Village cannot be held liable simply because it employs the police officers or others involved in these events. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). Instead, to maintain a Section 1983 claim against a municipal entity, Plaintiff must allege that his constitutional rights were violated as a result of an official policy or custom of that municipality. *Gable*, 296 F.3d at 537. More specifically, a municipality may be held liable under Section 1983 "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citation omitted).

Here, Plaintiff formulates his claim against the Village as follows:

On information in my belief, under common law, defendant village trains and encourages its Officers under color of law to stop citizens from using automobile travel under fabricated pretense or Of the Illinois vehicle code, with willfulness and reckless indifference to peoples common law rights While ignoring first, fourth, and fifth amendment rights of citizens for their purposes for detaining And racketeering citizens in conspiracy, and under color of law.

(R. 14, Am. Compl. at 13.) Plaintiff thus offers only confusing and conclusory statements regarding the Village's alleged unlawful policy. It appears that Plaintiff's claim is based on his belief that he is a sovereign citizen with special rights that cannot be infringed by state authorities. As outlined above, that claim is patently frivolous. Neither Plaintiff nor anyone else

25

has an "inherent" right to use the Illinois roadways unfettered by traffic laws or police intervention. To the extent Plaintiff is trying to assert that his own arrest violated the Fourth Amendment, that claim is barred by *Heck* for the reasons explained earlier. In addition, his complaint only describes one arrest—his own—and one instance of wrongful conduct is not sufficient to establish a widespread practice or policy. *See Thomas*, 604 F.3d at 303. For these reasons, the Village is dismissed with prejudice.

### 5. Schroeder

Plaintiff also names his public defender, Schroeder, as a Defendant in the amended complaint.[10] (R. 14, Am. Compl. at 1, 4.) Schroeder has not filed an appearance in this case, and it appears from the docket that she was never actually served. Plaintiff filed a waiver of service request for Schroeder on November 13, 2014, the same date he filed his amended complaint, but he did not include any mailing address for her on this document. (R. 16, Request for Waiver.) It is unclear whether Plaintiff actually mailed the waiver, but there is nothing on the docket to show that she agreed to waive service. Nor has Plaintiff filed proof of personal service upon this Defendant.

Under Federal Rule of Civil Procedure 4(m), service of process must be effected within 120 days of the date the complaint was filed. Fed. R. Civ. P. 4(m); *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 506 (7th Cir. 2014). Plaintiff filed his amended complaint in November 2014, and well over 120 days have passed since that time. The deadline for service may be extended where good cause is shown, *Parker*, 772 F.3d at 506, but Plaintiff has not sought an

---

[10] The exact basis of Plaintiff's claim against Schroeder is unclear, but the Court notes that she cannot be sued for constitutional violations under Section 1983 because she is not a state actor. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

extension or otherwise explained why he failed to serve this Defendant. Even though Plaintiff is proceeding *pro se*, he is obligated to comply with the Federal Rules of Civil Procedure. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) (*pro se* plaintiff was not excused from the requirements of Rule 4 regarding service on the defendants). Given the amount of time Plaintiff's amended complaint has been pending and the lack of any request by Plaintiff to extend the time for service, Schroeder will be dismissed without prejudice pursuant to Rule 4(m).

In summary, because of the deficiencies outlined above, the amended complaint is being dismissed in its entirety pursuant to Rule 12(b)(6).[11] The Seventh Circuit has directed that "if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). Plaintiff has already had several opportunities to plead his claims before Judge Pallmeyer and this Court. Nevertheless, the Court will give Plaintiff one last chance to salvage his complaint. However, the Court dismisses certain claims with prejudice that, in its view, can never be adequately repleaded at any time in the future, in fairness to these Defendants. The Court will afford Plaintiff one final opportunity to file an amended pleading that corrects the problems discussed herein, but only against the Defendants who have been dismissed without prejudice in this opinion. If Plaintiff fails to file an amended complaint by the deadline specified below, the dismissal of these claims

---

[11] Given the many threshold problems with Plaintiff's amended complaint, the Court need not reach Defendants' alternative arguments that they are entitled to qualified immunity even if Plaintiff alleged a plausible claim for violation of his constitutional rights. (*See* R. 20, State Defs.' Mot. to Dismiss at 9; R. 27, Lindenhurst Defs.' Mem. at 8.)

will be converted to one *with* prejudice, except as to the claims that are barred by *Heck*, which will remain dismissed without prejudice for the reasons explained above.

In closing, one final housekeeping matter must be addressed. On December 15, 2014, Plaintiff filed a document labeled, "Amended to the Amended Original Complaint." (R. 29.) It is not entirely clear what this document is, but to the extent Plaintiff intended it as an amended pleading, he is advised that he cannot amend his complaint in a piece-meal fashion. Instead, any amended complaint that he files must be complete in itself, as an amended complaint "supersedes all previous complaints and controls the case from that point forward." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Plaintiff's document is not complete; it is one page long, does not list all the Defendants, and contains confusing statements appearing to charge three of the Defendants with "money laundering" and other criminal offenses. (R. 29.) As stated above, Plaintiff cannot charge Defendants with criminal offenses. For clarity of the record, this document will be stricken.

## CONCLUSION

For the foregoing reasons, Plaintiff's "Motion to Disqualify Judge Ruben Castillo Pursuant to Illinois Code of Judicial Conduct and Violations Pursuant to Illinois Trial Rules" (R. 52) is DENIED. The motions to dismiss filed by the Village of Lindenhurst, John Fisher, Ralph Goar, Kevin Klahs, Dominic Marturano, Susan Lahr, Vicki Vanschloteren, Art Neubauer, Matt Formica, Brett Henne, Helen Rozenberg, Barbara Franger, Jesse White, and Lisa Madigan (R. 20, 22, 26) are GRANTED. The amended complaint (R. 14) is DISMISSED WITHOUT PREJUDICE. Defendant Elizabeth Schroeder is DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 4(m). Plaintiff's "Amended to the Amended Original Complaint" (R 29) is STRICKEN. Plaintiff is GRANTED to and including August 12,

28

2015, to file an amended complaint consistent with this opinion.  Plaintiff is again urged to

consult with an attorney or file a motion for attorney representation with this Court.  Plaintiff's

failure to file an amended complaint by the deadline will result in a dismissal of the entire

remaining case with prejudice, with the exception of the *Heck*-barred claims, for the reasons

outlined herein.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 25, 2015**